UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

DAUHJA VASHAD COLEMAN                      CIVIL ACTION NO. 19-cv-1106

VERSUS                                     JUDGE DRELL

NORTHWESTERN STATE UNIVERSITY, ET   MAGISTRATE JUDGE HORNSBY
AL

**REPORT AND RECOMMENDATION**

**Introduction**

Northwestern State University Campus Police Officer Jared Hamblin arrested Dauhja Vashad Coleman ("Plaintiff") based on an outstanding warrant. Hamblin allegedly fired two shots during the encounter, but Plaintiff was not hit. Plaintiff filed this civil rights action and asserted a claim of excessive force. Before the court is a Motion to Dismiss (Doc. 27) filed by Officer Hamblin and the University/Board of Supervisors. (A third defendant, the chief of police, has not been served and did not join the motion.) For the reasons that follow, it is recommended that the motion be granted and all claims against Hamblin and the University/Board of Supervisors be dismissed.

**Relevant Background**

Plaintiff alleged in his original complaint that Officer Hamblin discovered after a traffic stop that Plaintiff was wanted on a warrant from Bossier Parish. Plaintiff was handcuffed, after which he and Hamblin "engaged in a brief dialogue and the plaintiff began to run in the direction of the officer" for undescribed reasons. Hamblin is alleged to have "pulled his weapon and fired two shots in the plaintiff's direction before falling to the

ground." Plaintiff alleged that Hamblin's companion officer asked him why he did that, and Hamblin allegedly "replied that he misfired, thereby suggesting that the shooting was intentional." Plaintiff next alleged that the bullets "gazed his head," scaring him so much that he jumped into a nearby lake.

Officer Hamblin and the University responded to that original complaint with a motion to dismiss that asserted qualified immunity on behalf of Hamblin. The court issued an order (Doc. 17) and explained that it wished to ensure that Plaintiff was aware of his opportunity to amend his complaint and allege a clear set of facts before the qualified immunity defense was addressed. The order noted some particular facts that warranted clarification:

> Plaintiff might, for example, clarify whether he intends to allege that bullets actually contacted his head or merely passed near it when he alleges that the bullets "gazed his head." Plaintiff alleges elsewhere that the bullets "deafly whizzed past the plaintiff's ears," which suggests the bullets did not strike him, but that is not clear. It is also uncertain what Plaintiff means when he says that the officer "misfired." That might indicate to some readers that the officer fired by accident, but Plaintiff alleges that this suggests the shooting was intentional. Clarification would be helpful.

The order instructed that if Plaintiff took advantage of the opportunity, "he should plead his best case and not assume that he will be allowed to amend again if those allegations are found wanting."

Plaintiff took advantage of the opportunity and filed a Motion for Leave to File First Amended Complaint (Doc. 18) that presented a proposed amendment in response to the court's order. Plaintiff stated that the amended complaint was designed to meet the Twombly/Iqbal standard "and will address the qualified immunity issue" raised in the

motion to dismiss.  The court granted leave to file the First Amended Complaint, which also added new defendant Chief Craig Vercher (who has not been served and does not join the current motion to dismiss).

Plaintiff alleged in the first amended complaint that he was, on the date of the incident, an 18-year-old who was visiting a former high school classmate on the University campus.  Officer Hamblin initiated a traffic stop around 11:48 p.m. when he allegedly saw Plaintiff fail to stop at a stop sign.  Plaintiff showed his driver's license to Hamblin, and a records check revealed that Plaintiff "had an active arrest warrant from another parish."  Plaintiff was "promptly detained and handcuffed."

Plaintiff alleged that he "was compliant and attempted to explain that the warrant must be a mistake."  But recognizing "the futility of his explanation and the unwarranted disposition and insidious intent of Hamblin," Plaintiff "justifiably began to fear for his life."  "Despite being handcuffed with his hands behind his back, the defenseless [Plaintiff] instinctively took off to run for safety."

"The Defendant Hamblin immediately treacherously pulled his gun and shot twice with deadly force at the head of the Plaintiff."  "Unbelievably, the deafening bullets whizzed the ears of the Plaintiff, such that he paused because he thought he had been shot."  "Hamblin's partner immediately exclaimed, 'What are you doing?'"  "Hamblin, unabashedly retorted that he 'misfired', suggesting and confirming the plaintiff's fear that his life was in imminent danger."  Plaintiff alleges that, upon realizing that he was still alive, he ran for his life and jumped in Champion Lake.  It took officers over 30 minutes to coerce Plaintiff out of the lake.

Plaintiff alleged that Hamblin used excessive force in violation of Plaintiff's Fourth Amendment rights "when he pulled his gun, pointed it in his direction, and fired two shots at the defenseless afraid Coleman." Plaintiff states that Hamblin "had several alternative more reasonable courses of action, such (as) stepping aside or tripping the Plaintiff." Plaintiff alleged that Hamblin did not give him any warning or verbal commands before firing his weapon, was not in imminent danger of his life, and fabricated a report that claimed Plaintiff wrestled him to the ground and attempted to grab his gun.

**The University**

The first amended complaint named as a defendant Northwestern State University of Louisiana. The proper defendant in a suit against the University is the Board of Supervisors for the University of Louisiana System, and the Board moves for dismissal of the Section 1983 claims against it on the grounds that it is an arm of the state that is entitled to sovereign immunity under the Eleventh Amendment. See Davis v. Northwestern State University, 2015 WL 4544556 (W.D. La. 2015) ("There is no dispute that the Board of Supervisors is an arm of the State"); Jones v. Board of Supervisors, 58 F. Supp. 3d 670, 673 (W.D. La. 2014) (Board of supervisors was entitled to Eleventh Amendment immunity from Section 1983 claims).

Plaintiff concedes this issue in his memorandum (Doc. 29) and states that he "does not oppose dismissing the Board of Supervisors" as a party. That defendant is listed on the docket sheet as Northwestern State University, so it is recommended that all claims against Northwestern State University, as well as the Board of Supervisors, be dismissed without prejudice for lack of subject matter jurisdiction. U. S. v. Texas Tech University, 171 F.3d

279 n.9 (5th Cir. 1999) (reaffirming Fifth Circuit rule that Eleventh Amendment dismissals are for lack of subject matter jurisdiction).

**Officer Hamblin: Official Capacity**

Officer Hamblin argues that he is protected by the Eleventh Amendment "to the extent plaintiff names Hamblin in his official capacity." An official capacity claim is to be treated as a suit against the entity, in this case the University/Board, and the only reason to bring one is to seek injunctive relief against an arm of the state under the Ex Parte Young doctrine. Plaintiff has not asserted an official capacity claim; the word "official" does not appear anywhere in his original or amended complaints, and he does not seek an injunction. Given the lack of any asserted official capacity claim, no further discussion is warranted.

**Officer Hamblin: Individual Capacity**

Officer Hamblin invokes Fed. R. Civ. Pro. 12(b)(6) and attacks Plaintiff's first amended complaint for failure to state a claim on which relief may be granted. To survive the motion to dismiss, Plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Phillips v. City of Dall., 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).). In reviewing, "[w]e accept all well pleaded facts as true and view them in the light most favorable to the plaintiff." Heaney v. U.S. Veterans Admin., 756 F.2d 1215, 1217 (5th Cir. 1985). A plaintiff must plead facts that reasonably support his or her legal conclusions. Shaw v. Villanueva, 918 F.3d 414, 416 (5th Cir. 2019).

Hamblin also invokes the defense of qualified immunity. Qualified immunity "protects government officials from civil liability in their individual capacity to the extent

that their conduct does not violate clearly established statutory or constitutional rights."
Cass v. City of Abilene, 814 F.3d 721, 728 (5th Cir. 2016).  The official is entitled to
qualified immunity if, at the time the alleged act occurred, the official's conduct did not
violate clearly established statutory or constitutional rights of which every reasonable
person would have known.  Mullenix v. Luna, 136 S.Ct. 305, 308 (2015).

When a defendant asserts qualified immunity, the plaintiff must show that he has
pleaded "facts which, if true, would overcome the defense of qualified immunity." Zapata
v. Melson, 750 F.3d 481, 485 (5th Cir. 2014).   The plaintiff must show (1) that the official
violated a statutory or constitutional right, and (2) that the right was clearly established at
the time of the challenged conduct.   Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013).
For a right to be clearly established, it must be beyond debate that the defendant's actions
were unconstitutional at the time they were taken.  McCoy v. Alamu, 950 F.3d 226, 233
(5th Cir. 2020).

Although the Supreme Court's case law "does not require a case directly on point
for a right to be clearly established, existing precedent must have placed the statutory or
constitutional question beyond debate." Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018),
citing White v. Pauly, 137 S.Ct. 548, 551 (2017).  In White, the Court reminded lower
courts that clearly established law must be "particularized" to the facts of the case.  The
judgment of the appellate court was vacated because it relied on general constitutional
principles that did not identify a case where an officer acting under similar circumstances
was held to have violated the Fourth Amendment.

The specificity requirement was emphasized in McCoy, 950 F.3d at 232-33. A corrections officer was accused of spraying an inmate in the face with chemical spray for no reason. The Fifth Circuit held that the spraying crossed the line and was an Eighth Amendment violation, but it was not beyond debate until the court's February 2020 holding that the action was unconstitutional. The officer was afforded qualified immunity. The court explained that it would not do for the plaintiff to point to the general principle that prison officers cannot act maliciously and sadistically to cause harm. Plaintiff must point to a published decision in which those principles were applied to similar facts and the official's actions were held unconstitutional.

Another example of the burden of Plaintiff is found in Garcia v. Blevins, ___ F.3d ___, 2020 WL 2078391, *2 (5th Cir. 4/30/20), a police shooting case. Mr. Garcia was shot and killed after an officer ordered him to put down his handgun. Garcia refused, but he did put his hands up under the version of facts most favorable to the plaintiffs. The Fifth Circuit first stated that "[t]he [plaintiff] bear(s) the burden of showing that the right was clearly established." It explained that it was not enough for the plaintiffs to argue that Mr. Garcia had a clearly established right "to be free from deadly force where he was not attempting to flee and did not pose an immediate threat to the officers, nor anyone else." That was too general a statement of law.

The Garcia plaintiffs pointed to a Fifth Circuit case where officers were held to have violated clearly established law by shooting a man who held a kitchen knife but made no movement towards the officers or any other threatening gestures. Not close enough; a knife is not a gun. The Fifth Circuit noted its recent decision that police violated clearly

established law in 2010 when they shot someone who—though pointing a gun at his own head—made no threatening movements toward the officers, was facing away from the officers, was not warned by the officers, and may have been unaware of the officers' presence. That, too, was not close enough to the <u>Garcia</u> facts to defeat qualified immunity.

<u>Garcia</u> and <u>McCoy</u> demonstrate the heavy burden on Plaintiff to point to caselaw that made his Fourth Amendment right clearly established. And not just any court decision will suffice to make the law clearly established. The legal principle must be "dictated by controlling authority or a robust consensus of cases of persuasive authority." <u>District of Columbia v. Wesby</u>, 138 S.Ct. 577, 589-90 (2018). Even a decision from the Fifth Circuit may not be enough if it is unpublished, because unpublished cases issued on or after January 1, 1996 are not precedent. Fifth Circuit Rule 47.5. Thus, unpublished Fifth Circuit decisions have been rejected as a basis for clearly establishing the law for purposes of qualified immunity. <u>Marks v. Hudson</u>, 933 F.3d 481, 486 (5th Cir. 2019); <u>Defrates v. Podany</u>, 789 Fed. Appx. 427, 435 (5th Cir. 2019).

Plaintiff is represented by counsel, but he has not cited a single decision in which a court has held that an officer violated the constitution in similar circumstances. The Fifth Circuit did recently address a case that involved an officer's use of non-fatal deadly force. <u>Valderas v. City of Lubbock</u>, 937 F.3d 384 (5th Cir. 2019). The plaintiff in that case was the subject of a felony arrest warrant for a parole violation, the arrest team had been notified that he was armed and dangerous, he had a lengthy and violent criminal history, and he had recently evaded police in a car chase. The officers fired when they saw the plaintiff pull a gun from his waistband. Plaintiff survived even though he was hit with three of five shots.

The defendant officer raised qualified immunity, and the Fifth Circuit applied the familiar standard that when a person who has been arrested asserts that officers used excessive force in violation of the Fourth Amendment, the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances.  Graham v. Connor, 109 S.Ct. 1865 (1989).  To overcome an officer's claim of qualified immunity, a plaintiff must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009).

Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 109 S.Ct. at 1872.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id; Valderas, 937 F.3d at 389.

With respect to deadly force, the Fifth Circuit stated that it violates the Fourth Amendment "unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Valderas, quoting Romero v. City of Grapevine, 888 F.3d 170, 176 (5th Cir. 2018) (quoting Tennessee v. Garner, 105 S.Ct. 1694 (1985)).  In other words, "[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm." Valderas, 937 F.3d at 390, quoting Manis v.

Lawson, 585 F.3d 839, 843 (5th Cir. 2009).  Valderas afforded the officer qualified immunity after considering the totality of the facts and circumstances, which included that the officer could reasonably believe the suspect was attempting to use a weapon and the events transpired in a matter of seconds.

Plaintiff has been given every opportunity to allege specific facts that would show a Fourth Amendment violation occurred.  But many questions remain about what happened at the scene of the arrest.  Did Plaintiff run toward the officer as he alleged in his original complaint?   Plaintiff deleted this allegation in his amended complaint, but he suggested that Hamblin should have tripped Plaintiff or stepped aside, which also suggests Plaintiff was moving toward the officer.  Did the officer fire his weapon intentionally?  Or did he "misfire" it by accident?[1] The amended complaint implies that the firing was intentional, but that is never directly alleged despite the court asking about this very issue in a prior order.  What was the nature of the warrant that caused Officer Hamblin to arrest Plaintiff?  Was Plaintiff wanted for murder or unpaid traffic tickets?  We do not know.

The nature of the qualified immunity defense requires that the lack of such particular facts weigh in favor of affording immunity.  And Plaintiff has not cited a single decision that has held that an officer violated the Fourth Amendment rights of a fleeing suspect when he fired at the suspect (and missed) under similar circumstances.  Perhaps there is such a case, but it is not the obligation of the court to conduct a search on behalf of a party,

---

[1] In firearms parlance, a misfire is usually understood to mean the complete failure of a cartridge to fire when the trigger is pulled, often because the cartridge or the weapon is defective. It is almost certain this is not what Plaintiff intended by the use of the term.

especially one who is represented by counsel.  "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'"  Vann v. City of Southaven, 884 F.3d 307, 310 (5th Cir. 2018).  See also Bustillos v. El Paso Cty. Hosp. Dist., 891 F.3d 214, 222 (5th Cir. 2018) ("Appellant has not carried her burden of pointing this panel to any case that shows, in light of the specific context of this case, that the Doctors' or Nurses' conduct violated clearly established law.") and Jackson v. Texas, __ F.3d __, 2020 WL 2466374, *4 (5th Cir. 2020) ("Because Jackson failed to cite any authority showing that the right was clearly established, he has waived that issue.").

Plaintiff asked in his memorandum (Doc. 29, p. 2) that he be allowed to amend a second time if further clarity is needed to show that Hamblin violated his rights.  The court, on its own, gave Plaintiff an opportunity to amend his complaint, and the court pointed to specific facts that Plaintiff should clarify or address. Plaintiff was told to "plead his best case and not assume that he will be allowed to amend again if those allegations are found wanting."  Doc. 17.  Plaintiff now makes a general request that he be allowed another amendment, but he does not suggest what additional facts he could offer that he could not have already alleged.  No further amendments are warranted under these circumstances. U.S. ex rel. Adrian v. Regents of Univ. of California, 363 F.3d 398, 404 (5th Cir. 2004) (district court did not abuse its discretion in denying leave to amend when it had already given plaintiff one opportunity to amend in response to a motion to dismiss, and plaintiff did not state what additional facts he could plead).

Plaintiff has not met his burden to overcome Officer Hamblin's qualified immunity defense with respect to a Section 1983 Fourth Amendment claim.  Plaintiff's amended

complaint states that the court has supplemental jurisdiction over claims asserted under "the laws of the state of Texas," but the body of the complaint alleges only a Section 1983 claim and does not assert any claims based on Texas (or Louisiana) law.  Plaintiff's memorandum also does not invoke any state law claims.  All claims against Hamblin should be dismissed.

Accordingly,

It is recommended that Defendants' Motion to Dismiss (Doc. 27) be granted as follows: all claims against Northwestern State University or the Board of Supervisors for the University of Louisiana System are dismissed without prejudice for lack of subject matter jurisdiction, and all claims against Officer Jared Hamblin are dismissed with prejudice based on qualified immunity.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. <u>See</u> <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of May, 2020.

Mark L. Hornsby
U.S. Magistrate Judge